# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ICON Health & Fitness Incorporated,<br><br>        Plaintiff,<br><br>v.<br><br>PRO-FORM.COM, an internet domain name,<br><br>        Defendant. | No. CV-15-01981-PHX-BSB<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff ICON Health & Fitness, Inc. (Plaintiff or ICON) has filed an Amended Application for Entry of Default Judgment, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 33.) Plaintiff asks the Court to enter judgment in its favor and transfer the domain name *pro-form.com* to ICON. (*Id.*) As set forth below, the Court recommends the entry of default judgment in Plaintiff's favor and an order transferring the domain name *pro-form.com* to ICON.[1]

## I. Procedural Background

On October 15, 2015, Plaintiff filed a Complaint against Oleksandr Korhun (Korhun) alleging that Korhun had violated the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). (Doc. 1.) Specifically, Plaintiff alleged that it owns federally-registered PRO-FORM trademarks (PRO FORM, ProForm, and PRO-FORM)

---

[1] Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). However, because Defendant has not appeared or consented to magistrate judge jurisdiction, the Court proceeds by a Report and Recommendation. *See* General Order 11-03.

and that Korhun violated the ACPA by his unauthorized use of the PRO-FORM trademarks in his registration and use of the domain name *pro-form.com*.[2] (*Id.*) Plaintiff further alleged that Korhun was a resident of the Ukraine, and that it attempted to serve him with the Complaint and Summons under Rule 4(f) of the Federal Rules of Civil Procedure, which allows serving an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1); (Doc. 1.) For several months, Plaintiff attempted unsuccessfully to serve Korhun pursuant to the Hague Service Convention. (Docs. 13, 15.)

On September 9, 2016, Plaintiff moved to file an amended complaint. (Doc. 17.) Plaintiff asserted that it was unable to serve Korhun in the Ukraine and therefore could not obtain *in personam* jurisdiction over him. (*Id.*) Plaintiff sought leave to file an amended complaint to bring an *in rem* action against the domain name *pro-form.com*, pursuant to 15 U.S.C. § 1125(d)(2)(A). (*Id.*) The Court granted the motion and Plaintiff filed its Verified First Amended Complaint on September 22, 2016. (Docs. 18, 19.)

On December 7, 2017, GoDaddy, LLC (GoDaddy), the domain name registrar, filed a Registrar's Certificate notifying the Court that it had received the complaint and had placed the Defendant domain name *pro-form.com* on registrar lock, which would prevent it from being transferred, modified or otherwise manipulated. (Doc. 23.) The Registrar's Certificate also stated that GoDaddy was placing the Defendant domain name "under the dominion and control of the court until such time as GoDaddy receives further instructions with regard to the [d]omain [n]ame." (*Id.*)

---

[2] Congress amended the Trademark Act of 1946 (the Lanham Act) in 1999 to add section 43(d), which is codified as the ACPA at 15 U.S.C. § 1125(d), and is intended to protect consumers and to prevent misappropriation of trademarks by stopping "cybersquatting." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012) (citations omitted). Cybersquatting is defined as the bad faith use of a domain name to profit from the goodwill of a protected mark belonging to someone else. *Denso Corp. v. Domain Name denso.com*, 2014 WL 7208488, at *3 (N.D. Cal. Dec. 17, 2014). Cybersquatting occurs when the registrant of an infringing domain name attempts to profit by ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder. *Bosley Med. Inst., v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (citation omitted).

On November 30, 2016, Plaintiff moved for the entry of default asserting that, after proper service, Defendant failed to answer or respond to the Amended Complaint. (Doc. 22.) The Clerk of Court entered default on January 5, 2017. (Doc. 24.) On February 16, 2017, Plaintiff filed an application for default judgment. (Doc. 25.) On April 5, 2017, the Court found that Plaintiff had not properly served the Amended Complaint and therefore set aside the entry of default and denied without prejudice Plaintiff's application for default judgment. (Doc. 26.) The Court directed Plaintiff to serve the Amended Complaint in compliance with the ACPA. (*Id.*)

On April 13, 2017, Plaintiff sent a Notice under 15 U.S.C. § 1125(d)(2)(A), and a copy of the Amended Complaint, to Korhun at the postal and e-mail addresses Korhun provided to GoDaddy. (Doc. 27 at 3; Doc. 28 at ¶ 4.) Previously, on February 16, 2017, Plaintiff had sent its application for entry of default judgment to Korhun at his e-mail address listed with GoDaddy. (Doc. 27 at 3; Doc. 28 at ¶ 4.) On April 19, 2017, Plaintiff also filed a plan for publication and moved to publish notice of this action in *The Arizona Republic*. (Doc. 27.) On April 26, 2017, the Court approved Plaintiff's proposed notice and directed Plaintiff to publish the notice in *The Arizona Republic*. (Doc. 29.)

On May 15, 2017, Plaintiff filed a notice of service and stated that it had served the Amended Complaint in compliance with the requirements of 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa) and (bb) by (1) sending notice and a copy of the Amended Complaint to Korhun at the postal and e-mail addresses Korhun, the registrant, had provided to GoDaddy, the registrar, and (2) by publishing notice of the action, at the Court's direction, in *The Arizona Republic* on May 5, 2017, and online at www.azcentral.com. (Doc. 30.)

On June 23, 2017, Plaintiff filed an Amended Request for Clerk's Entry of Default (Doc. 31), and on June 26, 2017, the Clerk of Court entered default against the Defendant domain name *pro-form.com*. (Doc. 32.) On August 10, 2017, Plaintiff filed an Amended Application for Entry of Default Judgment. (Doc. 33.)

## II. Jurisdiction, Venue, and Service of Process

### A. Subject Matter Jurisdiction and Venue

The Court must have both subject matter jurisdiction and personal or *in rem* jurisdiction over a defaulting defendant before it can enter a default judgment. *Enterprise Holdings, Inc. v. Enterprisecarrentals.com*, 2012 WL 527355, at *3 (E.D. Va. Jan. 30, 2012). Plaintiff asserts cybersquatting claims under the ACPA, 15 U.S.C. § 1125(d), and this Court has subject matter jurisdiction under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a). Plaintiff alleges that GoDaddy is the domain name registry for the Defendant domain name and is located in this district.[3] (Doc. 19 at ¶¶ 4, 5; *see also* Doc. 23 (GoDaddy Registrar's Certificate).) Therefore, venue is proper in this district. *See* 15 U.S.C. § 1125(d)(2)(A) ("[t]he owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located").

### B. *In Rem* Jurisdiction

Plaintiff asserts that it is bringing an *in rem* action against the Defendant domain name under the ACPA. (Doc. 19.) In § 1125(d)(2)(A), the ACPA provides for an *in rem* action against a domain name if the owner of a mark establishes that its rights were violated, and that it either could not obtain personal jurisdiction over a person who would otherwise have been a defendant in a civil action under the ACPA, or through due diligence was not able to find a person who would have been the defendant in such an action. 15 U.S.C. § 1125(d)(2)(A). The statute provides that:

---

[3] Although Plaintiff alleges that Go Daddy is the Defendant domain name registry, GoDaddy is actually the Defendant domain name registrar. A registry and registrars have different responsibilities related to domain name registration. "The registrars handle the retail side of domain name registration, selling domain names to individual domain name registrants. The registry, in turn, performs a central but more limited function, namely maintaining and operating the unified Registry Database, which contains all domain names registered by all registrants and registrars in a given top level domain." *Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 619 (E.D. Va. 2003). VeriSign is the registry for all domain names ending in ".com." *Id*. at 618.

- 4 -

> (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if —
>
> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and
>
> (ii) the court finds that the owner —
>
> (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>
> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) . . . .

*Id.*

Therefore, to establish *in rem* jurisdiction under the ACPA, Plaintiff must first allege that the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office, or protected under 15 U.S.C. § 1125(a) or (c). *Id.* at § 1125(d)(2)(A)(i). Second, Plaintiff must show that it was unable to obtain personal jurisdiction over a person who would otherwise have been a defendant in a civil action under the ACPA, or through due diligence could not find the person who would have been a defendant in such an action. *Id.* at § 1125(d)(2)(A)(ii). Thus, to establish *in rem* jurisdiction, and entitlement to a remedy, Plaintiff must plead and prove a substantive violation of the Lanham Act and the inadequacy of personal jurisdiction. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:74 (4th ed. 2017). The sufficiency of Plaintiff's substantive claim and inadequacy of personal jurisdiction are addressed below.

### 1. Plaintiff's Cybersquatting Claim

Plaintiff's Amended Complaint alleges a claim for cybersquatting under the ACPA, 15 U.S.C. § 1125(d). (Doc. 19 at ¶ 1.) Plaintiff alleges that it is the owner of the federally-registered PRO-FORM trademarks and has continuously used some of these marks in interstate commerce since as early as 1983. (*Id.* at ¶¶ 9-14.) Plaintiff alleges

that Korhun registered the domain name *pro-form.com* with GoDaddy on December 14, 2010, but was not authorized to use that domain name and had no affiliation with Plaintiff. (*Id.* at ¶ 21.) Plaintiff further alleges that Korhun had no legitimate business purpose for registering the *pro-form.com* domain name, and registered the domain name as an act of cyberpiracy with the goal of later reselling that name to ICON for an exorbitant and unreasonable price. (*Id.* at ¶ 23.) Plaintiff alleges that Korhun's use of the *pro-form.com* domain name is likely to cause confusion as to the source or sponsorship of that domain name, and dilutes and tarnishes Plaintiff's trademarks. (*Id.* at ¶¶ 34, 35.) Finally, Plaintiff alleges that Korhun registered, trafficked in, and used the *pro-form.com* domain name for commercial use, and acted in bad faith. (*Id.* at ¶¶ 44-49.)

### a. Scope of the ACPA

In its two subsections, the ACPA provides an *in personam* claim, in § 1125(d)(1), against a person who registers an infringing domain name, and an *in rem* claim, in § 1125(d)(2), against the infringing domain name. The first subsection, which establishes an *in personam* action, also defines the substantive elements of a cybersquatting claim. *See* 15 U.S.C. § 1125(d)(1)(A). This section provides that:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section if, without regard to the goods or services of the parties, that person —
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that —
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; . . . .

*Id.*

Therefore, "the owner of a mark" may bring an *in personam* claim for cybersquatting against "a person," who has "a bad faith intent to profit from that mark" and "registers, traffics in, or uses a domain name" that "is identical or confusingly similar to" a "distinctive mark," or that "is identical or confusingly similar to or dilutive of" a "famous mark." *Id.* By its plain language, this section of the ACPA establishes an *in personam* cybersquatting claim for an "owner of a mark," and it has been applied to protect federally-registered marks and unregistered marks. *See, e.g., Lahoti v. Vericheck, Inc.,* 586 F.3d 1190, 1194, 1196-97 (9th Cir. 2009) (owner of unregistered trademark brought *in personam* ACPA claim); *Bosley,* 403 F.3d at 674, 680-81 (owner of registered trade mark brought *in personam* ACPA claim); *DaimlerChrysler v. The Net Inc.,* 388 F.3d 201 (6th Cir. 2004) (owner of registered and unregistered marks brought *in personam* ACPA claims); *City of Carlsbad,* 850 F. Supp. 2d at 1093, 1103 (owner of registered trademark brought *in personam* ACPA claim and the court noted that the ACPA protects both federally registered and unregistered marks).

The second subsection of the ACPA, § 1125(d)(2), provides that "the owner of a mark may file an in rem civil action against a domain name . . . if the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office (PTO), or protected under [§ 11125(a) or 1125 (c)]." 15 U.S.C. § 1125(d)(2)A)(i). As the court explained in *Harrods Ltd., v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002), "[b]y its terms, subsection (d)(2)(A) does not provide an in rem action for the owner of *any* type of mark protected under trademark law, but only for the owner of a mark that is either (1) registered in the PTO or (2) protected under §§ 1125(a) or (c)." *Id.* In *Harrods,* the court addressed the protections offered the owners of registered and unregistered marks and found that the "protections offered a mark registered in the PTO" include the "additional benefit" that "registration now entitles the owner of the mark to proceed on an in rem basis under § 1125(d)(2)." *Id.*

Furthermore, several cases address the rights of registered trademark owners to bring *in rem* cybersquatting claims. *See, e.g., Denso Corp.,* 2014 WL 7208488, at *1

(owner of registered trademark brought *in rem* action under ACPA); *Rosa Mexicano Brands, Inc., v. Rosamexicanopuntademita.com,* 2014 WL 4181068, at *4 (E.D. Va. Aug. 20, 2014) (same); *Enterprise Holdings, Inc.,* 2012 WL 527355, at *2 (same); *Con-Way Inc., v. Conwayracing.com*, 2009 WL 2252128, at *1 (N.D. Cal. July 29, 2009) (same); *Cosair Memory, Inc., v. Cosair7.com,* 2008 WL 4820789, at *2, *4 (N.D. Cal. Nov. 4, 2008) (same); *see also*, 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:74 (4th ed. 2017) ("trademark owner can assert via an in rem proceeding . . . claims under "§ 1125(d) for cyberpiracy of a mark (registered or unregistered).") Thus, as the owner of the federally-registered PRO-FORM trademarks, Plaintiff may assert an *in rem* cybersquatting claim against the allegedly infringing domain name.

### b. Elements of Cybersquatting Claim

A trademark owner asserting a claim under the ACPA must establish that (1) it has a valid trademark entitled to protection, (2) its mark is distinctive or famous, (3) the defendant domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark, and (4) the defendant used, registered, or trafficked in the domain name, (5) with a bad faith intent to profit. *Bosley,* 403 F.3d at 681. As set forth below, the Court finds that Plaintiff has sufficiently pled the elements of a cybersquatting claim.

First, Plaintiff must allege that it has a valid mark. Plaintiff alleges that it is the owner of federally-registered PRO-FORM marks, which it has used continually in interstate commerce since as early as 1983. (Doc. 19 at ¶¶ 8-13, 16.) Plaintiff has attached to its Amended Complaint copies of the PTO certificates of registration for the PRO FORM, ProForm, and PRO-FORM trademarks. (*Id.* at Exs. B – F.) Thus, Plaintiff sufficiently alleges that it owns the federally-registered PRO-FORM marks.

Second, Plaintiff must allege that its mark is distinctive or famous. Plaintiff alleges that the PRO-FORM marks are distinctive and famous. (*Id.* at ¶¶ 46-48.) Plaintiff alleges that its marks are federally-registered. (*Id*. at ¶¶ 9-14.) Registration of a

mark is prima facie evidence of the validity of the registered mark. *Lahoti*, 586 F.3d at 1199 (citing 15 U.S.C. § 1115(a); *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) ("[T]he fact that a mark is registered is strong evidence that the mark satisfies the statutory requirement for distinctiveness necessary for trademark protection.")). Plaintiff also alleges that it has used the PRO-FORM marks continuously for more than five consecutive years and, therefore, its rights to use the marks are incontestable under 15 U.S.C. § 1065. (Doc. 19 at ¶ 14.) Therefore, Plaintiff's allegation that it owns federally-registered trademarks strongly supports the finding that the marks are distinctive.

In addition, a plaintiff may prove that its mark is inherently distinctive or that it has acquired distinctiveness through a secondary meaning. *Lahoti*, 586 F.3d at 1197 (citations omitted). As the court explained in *Lahoti*, marks that are "suggestive," "arbitrary," or "fanciful," are inherently distinctive. Marks that are "generic," or that are "descriptive" and lack secondary meaning, are not distinctive and do not receive trademark protection. *Id.* The "primary criterion" for distinguishing between a suggestive and a descriptive mark "is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product." *Id.* at 1198 (citations omitted). A mark is suggestive "if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced." *Id*. (citations omitted).

In this case, Plaintiff alleges that the PRO-FORM marks are used in connection with the manufacturing, promotion, and sale of clothing, exercise equipment, and exercise apparatus. (Doc. 19 at ¶¶ 8-13.) In this context, the PRO-FORM marks are not descriptive or generic. Rather, a mental leap is required to reach a conclusion as to the nature of the products offered. *See Lahoti*, 586 F.3d at 1200 ("Context is critical to a distinctiveness analysis. Whether a mark is suggestive or descriptive 'can be determined only by reference to the goods or services that it identifies.'") (citations omitted), Thus, Plaintiff has sufficiently alleged that its mark is distinctive.

Because Plaintiff has sufficiently alleged that its marks are distinctive, the Court need not reach its allegations that its marks are famous. Nonetheless, the Court considers Plaintiff's allegations. Under the Lanham Act, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is famous, a court may consider "all relevant factors" including "(i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark," "(ii) [t]he amount, volume, and geographic extent of sales or goods or services offered under the mark," "(iii) [t]he extent of actual recognition of the mark," and "(iv) [w]hether the mark was registered." *Id*. at 1125(c)(2)(A)(i) – (iv).

In this case, Plaintiff alleges that it has used the marks in interstate commerce at least as early as 1983, that is has advertised and promoted goods and services using the marks, that is has "made a substantial investment in marketing and promoting its exercise equipment under the PRO-FORM marks," and that its "patrons, potential patrons, and the general public have come to know and recognize the PRO-FORM marks and associate them with ICON and its goods and services." (Doc. 19 at ¶¶ 9-13, 17.) Plaintiff further alleges that its "marketing and promotional efforts using the PRO-FORM marks have included, among other things, television, radio, newspaper, magazine, Internet, social media, and other media, such that ICON has built up extensive, valuable goodwill in its PRO-FORM marks." (*Id*. at ¶ 18.) Plaintiff alleges that "the PRO-FORM marks are widely recognized by the general consuming public in Utah and throughout the United States as a designation of source of services and goods provided by ICON." (*Id*. at ¶ 19.) Thus, the Court finds that Plaintiff has sufficiently alleged that its marks are famous.

Third, Plaintiff must allege that the Defendant domain name is identical or confusingly similar to its distinctive mark. Plaintiff alleges that the Defendant domain name, *pro-form.com,* is confusingly similar to the PRO-FORM marks. (*Id.* at ¶¶ 34, 47-49.) The Defendant domain name *pro-form.com* incorporates Plaintiff's PRO-FORM marks. "Courts generally have held that a domain name that incorporates a trademark is

'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved or permitted' by the mark holder." *DaimlerChrysler,* 388 F.3d at 205 (domain name *foradodge* confusingly similar to DODGE mark) (citation omitted); *see also Enterprise Holdings, Inc.,* 2012 WL 527355, at *1, *5 (domain name *enterprisecarrentals.com* confusingly similar to ENTERPRISE mark); *Con-Way, Inc.,* 2009 WL 2252128 at *3 (domain name *conwayracing.com* confusingly similar to CON-WAY mark). Furthermore, "courts have consistently 'found that slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant.'" *DaimlerChrysler,* 388 F.3d at 206. Therefore, the Court finds that Plaintiff has sufficiently alleged that the Defendant domain name is confusingly similar to its marks.

Fourth, Plaintiff must allege that Defendant used, registered, or trafficked in the domain name. Plaintiff alleges that Korhun registered the domain name *pro-form.com* with GoDaddy in December 2010, and was not authorized to use or register the domain name, and had no affiliation with ICON. (Doc. 19 at ¶¶ 21, 22.) These allegations are sufficient to establish that Korhun violated the statute by registering the domain name.

Finally, Plaintiff must allege that Defendant acted with a bad faith intent to profit. Plaintiff alleges that Korhun registered, trafficked in, and used the Defendant domain name in bad faith. (*Id*. at ¶¶ 49, 50.) The ACPA lists nine nonexclusive factors for courts to consider in determining whether bad faith exists. 15 U.S.C. § 1125(d)(1)(B). The court "need not, however, march through the nine factors seriatim because the ACPA itself notes that the use of the listed criteria is permissive." *Lahoti,* 586 F.3d at 1202 (citations omitted). Instead, in determining bad faith the court considers the unique circumstances of the case. *Id.* "Evidence of bad faith may arise well after registration of the domain name." *Id.*

Here, Plaintiff alleges that Korhun had no legitimate business purpose for registering the *pro-form.com* domain name, and registered the domain name as an act of cyberpiracy with the goal of later reselling that name to ICON for an exorbitant and

unreasonable price. (Doc. 19 at ¶¶ 23-26, 59(F).) Plaintiff alleges that the first page of the website at *pro-form.com* lists the domain name for sale and includes a link that states "Buy this domain pro-form.com." (*Id.* at ¶ 29.) A defendant's willingness to sell a domain name for an exorbitant profit is a "quintessential" cybersquatting practice. *Lahoti,* 586 F.3d at 1203 (defendant offered to sell domain name to plaintiff for $72,500); *see also Bosley,* 403 F.3d at 674 (noting that bad faith under the ACPA includes making extortionate offers to sell the domain name). Plaintiff also alleges that Korhun did not use the Defendant domain name for any purpose other than to directly solicit bids for the purchase of the domain name and to profit from adverting on the website he established in connection with the domain name. (*Id.* at ¶¶ 32 59(C).) These allegations are sufficient to establish that Korhun acted in bad faith in registering the domain, and this alleged conduct matches two of the factors of bad faith enumerated in the ACPA. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI) and (VII); *see also Lahoti,* 586 F.3d at 1202 (finding bad faith and noting that defendant never used domain name in connection with a bona fide offering of goods and services). Therefore, the Court finds that Plaintiff has sufficiently alleged that Korhun acted in bad faith in registering the Defendant domain name.

Therefore, after applying the elements of a cybersquatting claim to Plaintiff's allegations, the Court finds that Plaintiff has sufficiently alleged a substantive claim for cybersquatting under 15 U.S.C. § 1125(d).

### c. Remedies

Under the *in rem* provision of the ACPA, the remedies for cybersquatting are "limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owners of the mark." 15 U.S.C. § 1125(d)(2)(D)(I); Under Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In its Amended Application for the Entry of Default Judgment, Plaintiff requests that the Court order GoDaddy to transfer the domain name *pro-form.com* to ICON. (Doc. 33 at 2, 15.) Therefore, Plaintiff requests a remedy that is authorized under the ACPA for an *in rem*

action, and that does not exceed the relief demanded in the Amended Complaint. (See Doc. 19 at Prayer for Relief, ¶ B.)

### 2. The Inadequacy of Personal Jurisdiction

Under the second requirement for *in rem* jurisdiction under the ACPA, Plaintiff must show that it was unable to obtain personal jurisdiction over a person who would otherwise have been a defendant in a civil action under the ACPA, or that through due diligence it could not find the person who would have been a defendant in such an action. 15 U.S.C. § 1125(d)(2)(A)(ii). Here, Plaintiff has alleges that it cannot obtain personal jurisdiction over Korhun, the person who would be the defendant in a civil action under the ACPA, because he resides in the Ukraine (Doc. 19 at ¶¶ 4, 7, 36) and, despite diligent efforts, Plaintiff was unable to serve Korhun pursuant to the Hague Service Convention and Rule 4(f). (Docs. 13, 15, 17, and 19 at ¶¶ 36-42.) Plaintiff also asserts that Korhun has not used the domain name for any purpose other than to "directly solicit bids for the purchase of the domain name, and to profit from advertising on the Website he established in connection with the domain name." (Doc. 19. at ¶ 32.)

Based on Plaintiff's allegations, it appears that Korhun's only known contact with Arizona was registering and maintaining the Defendant domain name with GoDaddy. This limited contact is insufficient to establish personal jurisdiction over Korhun. *See Denso Corp.*, 2014 WL 7208488, at *3 (registering and maintaining a domain name in the forum is not sufficient to establish personal jurisdiction). In *Denso*, the court explained that the ACPA creates an *in rem* cause of action in the district where a domain name is registered and, consequently, in most or all potential ACPA *in rem* suits an alleged cybersquatter will have the specific contact of having registered the defendant domain name with an entity in the forum. *Id.* at *4. If such contact were sufficient to establish personal jurisdiction over the registrant of the domain name, that would "almost always" defeat *in rem* jurisdiction under the ACPA, and "in this crucial respect the ACPA would be made pointless." *Id.*

Because Korhun, the registrant of the Defendant domain name, resides in the Ukraine and does not appear to have any ongoing business activities in the United States, Plaintiff has established that it is unable to obtain personal jurisdiction over Korhun and, therefore, that it may proceed in an *in rem* action against the Defendant domain name. *See Enterprise Holdings,* 2012 WL 527355, at *3 (plaintiff could not establish personal jurisdiction over the registrant of the domain name who resided in India and did not have other business contacts with the United States); *see also Con-Way Inc.,* 2009 WL 2252128, at *2 (plaintiff could not establish personal jurisdiction over registrant of domain name by asserting that domain name was registered in the forum, or by showing that the domain name was a passive website that provided links to other sites but did not sell products within the forum); *Globalsantafe Corp.,* 250 F. Supp. 2d at 615 (same).

**C. Service of Process**

"Plaintiff must also establish that service of process was proper." *Con-Way, Inc.*, 2009 WL 2252128 at *3 (granting motion for default judgment and addressing jurisdiction and service of process in ACPA *in rem* action). "The ACPA provides a federal statutory alternative to the normal service requirements of [Rule] 4(f)." *Guo v. 8bo.com,* 2014 WL 2581315, at *2 (N.D. Cal. June 6, 2014) (citing 15 U.S.C. § 1125(d)(2)(A)-(B)). Therefore, the Court analyzes service under the statute, not Rule 4(f). *Id.* (citations omitted).

Under the ACPA, § 1125(d)(2)(A)(ii)(II), service of process in an *in rem* action is made by "sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar," and "publishing notice of this action as the court may direct promptly after filing the action." 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa) and (bb); *see also* § 1125(d)(2)(B) ("The actions under subparagraph (A)(ii) shall constitute service of process.")

In this case, Plaintiff served the Defendant domain name by sending a Notice under 15 U.S.C. § 1125(d) and a copy of the Amended Complaint, by mail and e-mail, to

Korhun, the domain name registrant, at the addresses listed with GoDaddy, the domain name registrar (Doc. 27 at 3; Doc. 28 at ¶ 4), and by publishing notice of this action, as directed by the Court. (Docs. 27, 29, 30.) Therefore, the Court finds that Plaintiff has complied with the notice provisions of § 1125(d)(2)(A)(ii)(II)(aa)-(bb) and has properly served Defendant.

## III. Default Judgment

Under Rule 55(a), the Clerk of Court shall enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Rule 55(b) provides that the Court may grant a default judgment after default has been entered by the Clerk of Court. *Id.* at 55(b). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc., v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).

The Ninth Circuit has established seven factors for courts to consider in determining whether to grant default judgment. *See Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors, known as the *Eitel* factors, are (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

In this case, the first, second, third, and sixth factors favor granting default judgment. Applying the first factor, the possibility of prejudice to Plaintiff is high if the Court does not enter default judgment because Plaintiff may be without any recourse for recovery. As set forth above in Section II.B.1(b), the Court has addressed the merits of Plaintiff's substantive claim and the sufficiency of the Amended Complaint, which are the second and third *Eitel* factors, and found that Plaintiff has sufficiently alleged a substantive claim for cybersquatting under 15 U.S.C. § 1125(d)(1)(a).

Under the sixth factor the possibility of excusable neglect is low. Plaintiff sent a Notice under 15 U.S.C. § 1125(d), and a copy of the Amended Complaint, by mail and e-mail, to Korhun, the domain name registrant, at the addresses listed with GoDaddy, the domain name registrar. (Doc. 27 at 3; Doc. 28 at ¶ 4.) Plaintiff also previously sent Korhun a copy of its application for default judgment by e-mail at his address listed with GoDaddy. (Doc. 27 at 3; Doc. 28 at ¶ 4.) Plaintiff also alleges that on multiple occasions Korhun offered to sell the Defendant domain name to ICON for exorbitant and unreasonable prices. (Doc. 19 at ¶ 50(F).) Therefore, it is very likely that Korhun received notice of this action and his failure to respond was not the result of excusable neglect.

The fourth factor is inapplicable as there is no sum of money at stake in the action. The fifth and seventh factors, as always, favor denying default judgment. Although there is a strong policy favoring a decision on the merits, and the possibility that Defendant would dispute the material facts, the existence of Rule 55 and the possibility of default judgment means that these factors are not dispositive. *See Phillip Morris USA, Inc. v. Castworld Prods.,* 219 F.R.D. 494, 501 (C.D. Cal. 2003) (citations omitted). Defendant's failure to answer the Amended Complaint makes a decision on the merits impractical, if not impossible. *Id.* Therefore, after considering the *Eitel* factors, the Court concludes that default judgment should be entered against the Defendant domain name.

**IV. Conclusion**

As set forth above, Plaintiff has sufficiently alleged an *in rem* cybersquatting claim under the ACPA, it properly served the Amended Complaint, to which Defendant failed to respond, and the Clerk of Court properly entered default. In addition, on a motion for default judgment the Court accepts Plaintiff's well pleaded facts as true, and the *Eitel* factors favor granting default judgment.

Accordingly, the Court recommends that the Amended Application for Entry of Default Judgment (Doc. 33) be granted and that the Court enter an order directing the domain name registrar, GoDaddy, to transfer the domain name *pro-form.com* to Plaintiff.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 12th day of September, 2017.

_____
Bridget S. Bade
United States Magistrate Judge